**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | |
|---|---|
| DONALD ROGER BURR,<br><br>Plaintiff,<br><br>v.<br><br>CAMBO STREATER; KIP KISER; BRENT TAYLOR; SEAN GOPAUL; MICHAEL IRVIN; JOHN ANDREW LEWIS; and NURSE PAM,<br><br>Defendants. | Civil Case No. 4:25-cv-12573-JD<br><br>**ORDER AND OPINION** |

This matter is before the Court on the Report and Recommendation ("Report") of United States Magistrate Judge Thomas E. Rogers, III, issued pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(e) (D.S.C.). (DE 24.) The Report recommends partially dismissing Plaintiff Donald Roger Burr's ("Plaintiff") Amended Complaint (DE 9), including dismissing Defendant Cambo Streater ("Streater") with prejudice and without issuance and service of process. Plaintiff timely filed written objections. (DE 28.)

For the reasons below, the Court sustains Plaintiff's objections in part only as to the recommended with-prejudice dismissal of Streater, overrules the objections in all other respects, adopts the Report in substantial part, and modifies the Report as set forth here.

## A. Background

Plaintiff filed this § 1983 action while detained at the Chesterfield County Detention Center. After the Magistrate Judge entered a proper-form order, Plaintiff filed the operative Amended Complaint. (DE 5; DE 9.) The Amended Complaint spans several years and concerns distinct events, including the towing and continued retention of a vehicle, law-enforcement responses to incidents Plaintiff reported, Plaintiff's March 2024 arrest on a larceny charge, his March 2025 arrest on a misuse-of-telephone charge, an April 2025 search and arrest, conditions of confinement and medical treatment, and the disposition of his deceased wife's remains. (DE 9; DE 24 at 3–13.)

As relevant here, Plaintiff alleges that Gopaul arrested him in March 2024 for stealing shingles even though Plaintiff believed other persons committed the offense and he possessed exculpatory information. (DE 9 at 15–17, 44; DE 24 at 5–6.) Plaintiff was subsequently indicted, and the prosecution remained pending when the Amended Complaint was filed and the Report was issued. (DE 24 at 5–6.)

Plaintiff separately alleges that, in April 2025, numerous law-enforcement officers arrived at his residence, entered the property without a valid search warrant, and used substantial force against him. According to Plaintiff, members of the law-enforcement "team" dragged him from bed, kicked or stomped him, and injured him severely enough that he could not initially be fingerprinted. (DE 9 at 26, 37–38, 43–45; DE 24 at 6–9.) Plaintiff alleges that Lewis and Irvin "operated" the entry and that Irvin was "operating this raid," but the Amended Complaint does not identify the

officer or officers who allegedly kicked, stomped, or otherwise used the challenged force. (DE 9 at 44–45; DE 24 at 7.)

Plaintiff also attributes various conditions at the detention center to Streater and alleges generally that policies under Streater's authority contributed to inadequate medical treatment and other unconstitutional conditions. (DE 9 at 27, 37–40.) As to medical care, however, Plaintiff alleges more specifically that Nurse Pam failed to provide appropriate treatment for significant medical conditions and told him that he would receive better attention if he stopped filing grievances. (DE 9 at 27–28, 45.) The Report concluded that the allegations against Nurse Pam survived initial screening. (DE 24 at 8–9.)

Finally, Plaintiff alleges that, following his wife's death, Taylor transferred her remains to Kiser, the county coroner, and that Kiser later cremated the remains notwithstanding Plaintiff's efforts to arrange burial in accordance with his wife's wishes. (DE 9 at 18–25, 41–42; DE 24 at 10–13.) The Report concluded that, at the screening stage and "out of an abundance of caution," Plaintiff plausibly alleged a due-process claim against Taylor and Kiser concerning the unconsented cremation and Plaintiff's alleged right to possession and disposition of the remains. (DE 24 at 13–14.)

**B. Report and Objections**

The Report concludes that Plaintiff has not stated a plausible claim against Streater. It reasons that § 1983 does not impose respondeat superior liability merely because Streater was sheriff and that Plaintiff does not allege facts showing either

Streater's personal participation in the challenged conduct or the elements necessary for supervisory liability. (DE 24 at 6–8, 11.) The Report likewise concludes that generalized references to "Streater's officers" are insufficient to connect Streater to the alleged April 2025 search, force, medical treatment, or conditions of confinement. *Id.*

The Report also concludes that Plaintiff cannot state a § 1983 claim based on dissatisfaction with Gopaul's decisions concerning whether other persons should have been investigated, arrested, or prosecuted. (DE 24 at 4–5.) As to Plaintiff's March 2024 arrest, the Report concludes that the malicious-prosecution theory fails because the prosecution had not terminated and because Plaintiff had been indicted. (DE 24 at 5–6.)

With respect to the April 2025 events, the Report permits the illegal-search claim against Gopaul, Lewis, and Irvin to proceed but concludes that the Amended Complaint fails to state an excessive-force claim because it does not identify any named Defendant who personally used the alleged force. (DE 24 at 6–9.) The Report reaches a similar conclusion as to the detention-center conditions, finding that Plaintiff fails to connect the challenged conditions to the personal conduct of any Defendant. (DE 24 at 7–8.)

Plaintiff raises five principal objections. First, he argues that Streater should remain in the action because a tactical or "SWAT" operation necessarily required approval by senior command and because Streater would have known about the operation. Plaintiff also characterizes some of the complained-of conduct as

retaliation and argues that Streater's position as sheriff establishes his responsibility. (DE 28 at 1–4.) Second, Plaintiff challenges the Report's treatment of Gopaul, reiterating his position that Gopaul failed to act against other persons while wrongfully pursuing charges against Plaintiff. (DE 28 at 5–7.) Third, Plaintiff provides additional detail about the alleged April 2025 use of force and explains that officers wore dark clothing and face coverings, making identification difficult. (DE 28 at 7–10.) Fourth, he objects to the treatment of his detention-center conditions and alleges, among other things, lack of religious services, legal resources, bedding, and appropriate medical treatment. (DE 28 at 11–13.) Fifth, Plaintiff expands on the allegations concerning Taylor, Kiser, and his wife's remains. (DE 28 at 13–15.)

**C. Standard of Review**

A magistrate judge's recommendation carries no presumptive weight, and responsibility for the final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). When a party makes a specific written objection, the Court must conduct a de novo review of the challenged portion of the Report and may "accept, reject, or modify" the recommended disposition. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

An objection is sufficiently specific when it "reasonably . . . alert[s] the district court of the true ground for the objection." *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023) (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). Because Plaintiff proceeds pro se, his objections are construed liberally. See *id.* at 460–61; *Martin v. Duffy*, 858 F.3d 239, 245–46 (4th Cir. 2017). The Court therefore

reviews de novo the portions of the Report fairly implicated by Plaintiff's objections. As to portions of the Report to which no specific objection is made, the Court need only satisfy itself that there is no clear error on the face of the record. *Diamond v. Colonial Life & Accident Insurance Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

Because Plaintiff is a prisoner proceeding in forma pauperis and seeks relief arising from governmental conduct, the Amended Complaint is subject to screening under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. A pro se complaint must be construed liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), but it must nevertheless contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At this stage, the Court accepts well-pleaded allegations as true and draws reasonable inferences in Plaintiff's favor. It does not resolve evidentiary disputes or assess credibility. *See Langford v. Joyner*, 62 F.4th 122, 124–27 (4th Cir. 2023).

**D. Discussion**

**1. Streater**

The Report concludes that Plaintiff fails to state a claim against Streater because the Amended Complaint does not allege Streater's personal participation in the challenged conduct and does not plead the elements of supervisory liability. (DE 24 at 6–8, 11.) Plaintiff objects that the April 2025 tactical operation necessarily required approval from "high command," that Streater, therefore, knew of or approved the operation, and that Streater's supervisory authority and the parties' prior disputes support liability and retaliation. (DE 28 at 1–4.) The Court has

considered those assertions de novo but concludes that they do not cure the pleading deficiencies identified in the Report.

Section 1983 liability is personal. A plaintiff must allege facts permitting the inference that the particular defendant, "through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. A supervisory official, therefore, cannot be held liable merely because officers within his chain of command allegedly committed unconstitutional conduct.

Consistent with *Iqbal*'s requirement that liability rest on the supervisor's own conduct, the Fourth Circuit's supervisory-liability framework requires a plaintiff to establish that the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct presenting a "pervasive and unreasonable risk" of constitutional injury; that the supervisor's response demonstrated deliberate indifference to or tacit authorization of the conduct; and that an affirmative causal link existed between the supervisor's inaction and the plaintiff's particular injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994); *see also Slakan v. Porter*, 737 F.2d 368, 372–73 (4th Cir. 1984). A pervasive risk generally requires more than a single isolated incident; the conduct ordinarily must be widespread or have occurred on several occasions. *See Slakan*, 737 F.2d at 373–74.

Plaintiff's Amended Complaint does not satisfy those requirements. It alleges that "Streater's officers" participated in the April operation, but it does not allege that Streater entered the residence, used force against Plaintiff, directed any officer to employ unconstitutional force, or was present while such force was used. (DE 9 at 37–

38.) Nor does the pleading identify a pattern of similar incidents known to Streater from which deliberate indifference or tacit authorization reasonably could be inferred.

Even assuming for purposes of de novo review that Streater approved the deployment, approval of a law-enforcement operation does not itself permit a reasonable inference that Streater authorized a warrantless entry, directed officers to use excessive force, or knew that subordinates would engage in unconstitutional conduct. Section 1983 requires more than an inference that the sheriff ultimately controlled the department.

Plaintiff's retaliation theory fares no better. A First Amendment retaliation claim requires allegations that the plaintiff engaged in protected activity, that the defendant took action adversely affecting the plaintiff's First Amendment rights, and that a causal relationship existed between the protected activity and the defendant's conduct. *See Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (citing *Constantine v. Rectors & Visitors of George Mason University*, 411 F.3d 474, 499 (4th Cir. 2005)). The Court has considered Plaintiff's additional factual assertions in conducting de novo review. Even if those assertions are credited, however, they do not plausibly connect Streater personally to a retaliatory act or otherwise supply the missing causal allegations. The objections do not operate as an amended pleading.

Accordingly, the Court overrules the substantive portion of Plaintiff's first objection and adopts the Report's conclusion that the Amended Complaint fails to state a claim against Streater.

The Court reaches a different conclusion, however, as to the recommended with-prejudice disposition. A dismissal with prejudice is unnecessary to resolve the present pleading deficiency. Although *Denton v. Hernandez* addressed dismissal for factual frivolousness under the former version of § 1915, the Supreme Court specifically identified the prejudicial effect of dismissal as a relevant consideration where a pro se plaintiff's factual allegations potentially could be cured through more specific pleading. 504 U.S. 25, 34 (1992).

The Court does *not* conclude that Plaintiff has stated a claim against Streater, nor does it grant Plaintiff another amendment as part of this Order. The case has proceeded well beyond initial screening, and the amendment deadline established by the Scheduling Order has expired. (DE 40.) The narrower conclusion is simply that the record does not require a merits-preclusive dismissal of Streater. The Report is, therefore, modified to provide that Streater is dismissed *without prejudice* and without issuance and service of process.

**2. Gopaul and the March 2024 prosecution**

The Report concludes that Plaintiff has no constitutional right to compel investigation or prosecution of third parties and that the March 2024 malicious-prosecution theory fails because the prosecution had not ended and Plaintiff had been indicted. (DE 24 at 4–6.) Plaintiff objects that Gopaul possessed or disregarded exculpatory information while pursuing charges against Plaintiff and declining to act against others. (DE 28 at 5–7.) The Court reviews those contentions de novo. But the Supreme Court has made clear that "a private citizen lacks a judicially cognizable

interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Thus, regardless of Plaintiff's disagreement with Gopaul's exercise of law-enforcement discretion, the failure to investigate, arrest, or prosecute a third party does not, without more, state a constitutional claim belonging to Plaintiff.

The March 2024 malicious-prosecution theory also fails as pleaded. A Fourth Amendment claim under § 1983 analogous to malicious prosecution requires favorable termination of the underlying criminal proceeding. *See Thompson v. Clark*, 596 U.S. 36, 39, 49 (2022). *Thompson* clarified that favorable termination requires only that the prosecution end without a conviction; it does not eliminate the requirement that the prosecution end. *Id.* at 39, 49.

Here, according to the Amended Complaint and the record before the Magistrate Judge, the March 2024 prosecution remained pending when this action was filed and when the Report issued. (DE 24 at 5–6.) The operative pleading, therefore, did not allege favorable termination.

The Report also relies on Plaintiff's indictment. A facially valid indictment returned by a properly constituted grand jury ordinarily "conclusively determines the existence of probable cause." *Durham v. Horner*, 690 F.3d 183, 189 (4th Cir. 2012) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975)). That rule does not protect an officer who "deliberately supplied misleading information that influenced the [grand jury's] decision." *Id.* at 189–90.

Plaintiff's objection emphasizes evidence that he believes Gopaul should have regarded as exculpatory, but it does not allege facts showing that Gopaul deliberately supplied materially misleading information to the grand jury or otherwise tainted the indictment. (DE 28 at 5–7.) Plaintiff's allegation that Gopaul possessed or failed to pursue potentially exculpatory information does not, without more, plausibly allege grand-jury taint. *See Durham*, 690 F.3d at 190 (explaining that an officer need not "exhaust every potentially exculpatory lead or resolve every doubt" before probable cause is established). The objection, therefore, does not overcome either the favorable-termination deficiency or the probable-cause analysis. The Court accordingly adopts the Report's disposition of these claims.

**3. The April 2025 excessive-force allegations**

The Report concludes that the Amended Complaint does not identify any named Defendant who personally used the alleged force during the April 2025 search and arrest. (DE 24 at 7–9.) Plaintiff objects that the officers wore dark tactical clothing and face coverings, making individual identification difficult. (DE 28 at 7–10.) The Court has considered that explanation de novo. The objection requires a distinction between the seriousness of the alleged conduct and the adequacy of the pleading against the named Defendants.

The Court does not minimize Plaintiff's allegations. He asserts that officers entered his residence, dragged him from bed, kicked or stomped him, and inflicted substantial injuries. (DE 9 at 26, 37–38; DE 28 at 7–10.) For purposes of screening, the Court accepts those factual allegations as true. The deficiency identified by the

Report is not that the alleged force was insufficiently serious. The problem is that Plaintiff does not identify which Defendant allegedly used, directed, or knowingly failed to prevent that force.

In *Langford*, the Fourth Circuit reaffirmed that a pleading must contain "sufficient facts to allow the court to infer liability as to each defendant." 62 F.4th at 126. General allegations against a group of defendants do not satisfy Rule 8 when they fail to explain how each individual defendant participated in the alleged constitutional deprivation. *Id.* at 125–27; *see also Iqbal*, 556 U.S. at 676.

Plaintiff alleges that Lewis and Irvin "operated" the entry and that Irvin was "operating this raid." (DE 9 at 44–45.) Those allegations may connect Lewis and Irvin to the operation itself, which is why the illegal-search claim was allowed to proceed. They do not allege that either man personally kicked, stomped, struck, or otherwise applied the complained-of force, directed another officer to do so, or stood by with knowledge and a realistic opportunity to intervene.

Plaintiff's objection explains that the officers wore dark tactical clothing and masks, making individual identification difficult. (DE 28 at 7–10.) That explanation may account for Plaintiff's inability to identify the alleged assailants, but it does not permit the Court to impose liability on a named Defendant without factual allegations connecting that person to the force.

At the same time, *Gordon* counsels against treating that identification problem as an adjudication that no claim could exist against the officers who allegedly applied the force. 574 F.2d at 1152–53. The Court, therefore, adopts the Report's conclusion

that the present Amended Complaint fails to state an excessive-force claim against the named Defendants. To the extent clarification is necessary, that dismissal is without prejudice. Nothing in this Order, however, reopens the pleadings or authorizes a new amendment outside the requirements of the Federal Rules of Civil Procedure and the governing Scheduling Order. The third objection is, therefore, overruled.

**4. Detention-center conditions**

The Report concludes that Plaintiff fails to connect the challenged detention-center conditions to Streater or another named Defendant's personal conduct. (DE 24 at 7–8, 11.) Plaintiff objects that Streater, as sheriff, exercised authority over the facility and identifies restrictions involving religious practice, legal materials, bedding, and medical care. (DE 28 at 11–13.) The Court reviews those assertions de novo, but they do not cure the personal-involvement defect.

That theory again rests on supervisory status rather than facts establishing personal liability. The Amended Complaint does not plausibly allege that Streater personally imposed the challenged restrictions, had actual or constructive knowledge of a pervasive pattern of unconstitutional conditions, deliberately failed to respond, and thereby caused Plaintiff's particular injuries. *See Shaw*, 13 F.3d at 799.

The Court does not decide whether any of the conditions described by Plaintiff could, if properly pleaded against a proper defendant, implicate the Constitution or another federal right. The narrower conclusion is that the operative pleading does

not connect those conditions to personal conduct by Streater or another named Defendant sufficient to satisfy § 1983. The fourth objection is overruled.

**5. Taylor, Kiser, and Plaintiff's wife's remains**

The Report did not dismiss the claim concerning Plaintiff's wife's remains; it permitted the claim against Taylor and Kiser to proceed. (DE 24 at 12–14.) Plaintiff nevertheless elaborates on the allegedly unauthorized transfer and cremation of his wife's remains. (DE 28 at 13–15.) Because the Report construed those allegations liberally and in Plaintiff's favor, the objection does not identify an adverse ruling requiring modification.

The Report recognized that South Carolina law treats a deceased person's remains as a form of "quasi property" in the person entitled to possession for burial purposes. *See Simpkins v. Lumbermens Mut. Cas. Co.*, 20 S.E.2d 733, 736 (S.C. 1942). It further considered South Carolina law on the disposition of veterans' remains and concluded that, at the screening stage, Plaintiff may have stated a due-process claim about the allegedly unconsented cremation and interference with the disposition of the remains. (DE 24 at 12–14.) Service was, therefore, authorized on Taylor and Kiser.

The Report appropriately left unresolved whether Taylor, a private funeral-home operator, ultimately qualifies as a state actor for purposes of § 1983. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (requiring conduct fairly attributable to the State). That question did not need to be resolved conclusively at initial screening.

Accordingly, Plaintiff's fifth objection supplies no basis to reject the Report. The claims concerning Taylor and Kiser remain pending subject to later merits adjudication.

**6. Remaining portions of the Report**

The Court has reviewed the portions of the Report to which Plaintiff makes no specific objection and finds no clear error. The Court, therefore, adopts the unobjected-to portions of the Report concerning the vehicle/property allegations; the March 2025 arrest attributed to nonparty Gainey; Plaintiff's request for dismissal of pending criminal charges through this § 1983 action; and the mail-related allegations against Nurse Pam. The Court likewise finds no clear error in the Report's determination that Plaintiff's medical-care allegations against Nurse Pam survive initial screening and that the illegal-search allegations against Gopaul, Lewis, and Irvin proceed.

The Court emphasizes that this Order addresses the sufficiency of the Amended Complaint at the screening stage and the objections to the November 24, 2025, Report. Since that time, the surviving Defendants have been served, answers have been filed, discovery has occurred, and the parties have filed additional motions. Nothing in this Order resolves or prejudges any later-filed dispositive motion, which must be adjudicated on its own record and under the governing standard of review.

**E. Conclusion**

For the foregoing reasons, it is **ORDERED** that:

1. Plaintiff's objections (DE 28) are **SUSTAINED IN PART** only insofar as Plaintiff challenges the Report's recommendation that Defendant Cambo

Streater be dismissed with prejudice. In all other respects, Plaintiff's objections are **OVERRULED**;

2. The Report and Recommendation (DE 24) is **ADOPTED IN PART** and **MODIFIED IN PART** consistent with this Order. The Court adopts the Report's failure-to-state-a-claim analysis but modifies the recommended prejudice determination as to Streater;
3. Defendant Cambo Streater is **DISMISSED WITHOUT PREJUDICE** and without issuance and service of process;
4. The Court adopts the Report's dismissal of Plaintiff's presently pleaded claims concerning the failure to investigate or prosecute third parties, the March 2024 false-arrest/malicious-prosecution theory, the March 2025 arrest attributed to a nonparty, the excessive-force claim against the presently named Defendants, the generalized detention-center-condition claims, the vehicle/property claims, and the mail-related claim against Nurse Pam, for the reasons stated in the Report and supplemented herein;
5. This Order does not disturb the claims previously authorized for service: (a) Plaintiff's illegal-search claim against Defendants Sean Gopaul, John Andrew Lewis, and Michael Irvin; (b) Plaintiff's claims against Defendants Brent Taylor and Kip Kiser concerning the disposition of Plaintiff's deceased wife's remains; and (c) Plaintiff's medical-care claim against Nurse Pam;

6. Nothing in this Order reopens the deadline to amend the pleadings established by the Scheduling Order (DE 40), grants Plaintiff leave to file another amended complaint, or otherwise alters the requirements of Federal Rules of Civil Procedure 15 and 16; and
7. This matter shall remain referred to the Magistrate Judge for further pretrial proceedings, including disposition or recommendation as appropriate concerning the motions presently pending.

Because claims remain pending against multiple Defendants, no final judgment will enter at this time.

**IT IS SO ORDERED.**

Florence, South Carolina
October 14, 2026

Joseph Dawson, III
United States District Judge